Curia, per
Evans, J.
Ever since the case of the chimney-sweeper’s boy, who found a jewel, (Armory vs. Delamirie, 1 Stra. 505,) it has never been doubted, so far as I know, that the mere possession of a chattel was a sufficient title to maintain *240 trover against all persons but' the true owner: (2 Taunt. 302; 2 Bingham, 173.) But it is argued, in this case, that, because the sheriff of Lexington delivered the cattle to the plaintiff, in violation of his duty, a different rule should be applied. That this proceeding was irregular is very certain, and the sheriff is liable for any injury which those having'an interest in the cattle may sustain: but that will not authorize a wrong-doer to disturb the possession of the sheriff’s bailee. It is said, in 3 Stephen’s N. P. 2668, that a sheriff in possession, a carrier, a factor, a consignee, a pawnee, a gratuitous bailee, and persons responsible over to their principals, may maintain trover on their possession; and, in Duncan vs. Spear, (11 Wend. 54,) it was decided that trover may be maintained against a trespasser, on a prior possession obtained by a purchaser of a chattel under a void execution. The reasons, as well as the authorities, I think, go to this extent —a stranger, or wrong-doer, has no right to put one in possession to the proof of any other title but that which the law presumes from possession alone. The rule is the same in relation to real estate. If Shier could have succeeded in establishing Hodges’s title, under the purchase from Collins, then he would have established in himself a right of property, which draws to it a right of possession, and should have succeeded- in his defence. But this he failed to do; and was, consequently, liable to the plaintiff for taking the cattle out of their possession. This is all that need be said on the motion for a nonsuit, and the third ground of the motion for a new trial. The first ground alleges error in the. refusal of the Circuit Court to allow the defendant to give in evidence the letter of Cloud, admitting the general agency of Collins. If one offer a witness to prove a fact, and he does not prove it, he may still offer other evidence to prove the same fact; but he cannot do this by proof that his witness had, at another time, made a different statement. His declaration, in opposition to his oath, would not prove the agency, and could not be received for any other purpose than to discredit him; and the rule is very clear, that one shall not be allowed to discredit his own witness.
*241 The second ground alleges that Boyd was an incompetent witness. It is alleged, in the notice, that he was the surety on the attachment bond. This is a mistake. He had given to the sheriff a bond to indemnify him against any liability for delivering the cattle to the plaintiff. If, under these circumstances, he was incompetent, it must be because he had an interest in the result of the suit, or the record would be evidence for or against him. I do not perceive that either of these are true. In Walton vs. Shelly, (1 T. R. 300,) Lord Mansfield said, the modern inclination of the Courts was, to let the objection go to the credit, tmless the interest be clear.
In the examination of Cloud, he said Collins was not authorized to sell the drove; he had no general authority to buy or sell ; he was to take the cattle to Charleston, and there deliver them to the Big Butcher Company; that, on Collins reporting the sale, he, believing it the best that could be done, approved and confirmed it, but he had previously conveyed-all his interest to Gay to pay their debts. It was insisted on the trial that this conveyance should, have been produced and its execution proved, or some excuse given for'its non-production. This is the subject of the fourth ground in the notice. The general rule is very clear, that, where there is written evidence, parol evidence is inadmissible, if-the fact in any way constitute a part of the evidence of the plaintiff’s title or the defendant’s defence. But the rule is otherwise where the existence of the paper is merely a collateral circumstance, and no part of the title, although an inference favorable to the right of the party arises out of the execution of it. This question I consider as settled by Lowry vs. Pinson, (2 Bail. 324). But the fact whether Cloud had conveyed, as he said, was wholly immaterial. It is clear from the evidence that Collins was but a special agent to drive the cattle and deliver them in Charleston. As such special agent, he had no authority to sell. Powell vs. Buck, (4 Strob. 427.) If Hodges had any title, it is to be derived from the confirmation of the sale by the owners. But in the mean time, as I understand the facts, the sheriff had levied the writ of attachment: — of course the title, *242 thus acquired by the sheriff, and the lien of the plaintiff’s attachments, could not be defeated by Cloud’s subsequent confirmation, even if no such conveyance had been made.
I think, therefore, there is nothing in any of the grounds of appeal which authorizes the interference of this Court, and that the motions should be dismissed ; and it is so ordered.
O’Neall, Frost, Withers and Whitner, JJ., concurred.
Wardlaw, J.
A plaintiff’s right to maintain trover depends upon his right of possession. Property, general or special, raises an implication of the right of possession: and bare possession is of itself prima facie evidence of such right. Against a trespasser, the presumption of right, which arises from possession, ordinarily subsists unrebutted, notwithstanding evidence given by the trespasser that the title is in a third person: for it will against the trespasser be further presumed that the possession-was held by the assent of the owner. If, however, it should be made to appear that the possession of the plaintiff was wrongful, and in opposition to the will of the owner, who was entitled to the possession, even a trespasser, if he should not, by such evidence, entirely defeat the action, would certainly reduce the damages to a trifle. In the case of Armory vs. Delamirie, if it had appeared that the chimney-sweep had stolen the jewel, and the owner had been present, demanding it, it is not conceived that the chimney-sweep could have recovered the value, and the defendant have been left answerable again for the value to the owner. Damages in trover are intended to compensate for the injury done to the plaintiff’s right by the conversion; and if the plaintiff had no right to hold the possession, his claim for damages against a defendant, who had no right to take it away, rests upon the defendant’s demerit, and not upon his right.
In this case the delivery by the sheriff was utterly unlawful, and the plaintiff had no more right than such as could be derived from a sheriff’s private sale of property, levied under execution, or from any other unauthorized act of a sheriff. Acting through his agent, the plaintiff was particeps criminis with the sheriff in *243 a plain act of official usurpation. The title was in Cloud and Gay or in Gay alone, if not in Hodges, when the sheriff seized: and the title could be changed only by a regular sale or other legal proceeding under the attachment. The special property which the sheriff acquired by levy ceased as soon as the lawful purpose of the levy was abandoned, and the property was irregularly delivered to the plaintiff, to be taken out of the sheriff’s district. The possession of Shier, derived from Hodges, who, if not a purchaser from the owner, was at least the bailee of the owner’s agent, was something better than the possession of a mere stranger and wrong doer. When the sheriff’s lawful right ceased, all the rights of the owners, their bailees and assignees, were just as if there had been no attachment: and every act of confirmation done by Cloud should be considered as if no rights of attaching creditors had intervened.

Motion dismissed.